353 A.2d 434

COMMONWEALTH of Pennsylvania

v.

Leroy SAXTON, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Nov. 17, 1975.

Decided March 17, 1976.

Timothy J. Savage, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James J. Wilson, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

440

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Leroy Saxton, was indicted for murder, aggravated robbery, burglary, conspiracy and violation of the Uniform Firearms Act arising out of the robbery and murder of Michael Kerrigan at a service station in Philadelphia. Appellant was tried by a judge and jury and was found guilty of first-degree murder, aggravated robbery and conspiracy. Post-trial motions were denied and appellant was sentenced to life imprisonment on the first-degree murder conviction, and ten to twenty years on the aggravated robbery charge.[1] This appeal followed.

Appellant argues that the court below erred in dismissing Juror No. 6 in violation of Pa.R.Crim.P. 1108(a), without a showing that the juror was "unable or disqualified to perform their duties." We agree.

Pa.R.Crim.P. 1108(a) provides:

"(a) The trial judge may direct that not more than two jurors in addition to the principal jurors he called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace principal jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. An alternate juror who does not replace a principal juror shall be discharged before the jury retires to consider its verdict."

The facts surrounding the dismissal of Juror No. 6 are as follows. On the fourth day of appellant's trial, the trial judge *sua sponte* called a conference in chambers. The participants included the district attorney, William T. Cannon, defense counsel, Timothy Savage, and Juror No. 6.

---

1. Appellant received a suspended sentence on the conspiracy conviction and the remaining indictments were nolle prossed.

During the conference the trial judge asked Juror No. 6 the following questions:

"THE COURT: . . . are you ill? .

"JUROR NO. 6: No.

"THE COURT: I notice you have a great deal of trouble in keeping awake. You keep dozing off.

"JUROR NO. 6: I wasn't dozing. I am in pain. I went bicycle riding this weekend.

"THE COURT: Even before this weekend. Have you been taking anything . . . ?

"JUROR NO. 6: No.

" THE COURT: Any pills or narcotics?

"JUROR NO. 6: No.

"THE COURT: Because it appears to everyone that you are not paying attention.

"JUROR NO. 6: I am paying attention.

"THE COURT: I am going to excuse you."

The judge then advanced his personal observations that Juror No. 6 was "yawning," "slouching down in her seat," and "shielding her eyes from the light," and at times "appeared to be dozing." In addition, the trial judge stated that he had asked a Dr. Polivoy to sit in the courtroom and observe Juror No. 6 and report to the court. Dr. Polivoy at no time was made available to defense counsel or the district attorney for cross-examination either on his credentials or what in fact he observed, or on his opinion given to the trial judge that Juror No. 6 should be removed. The final "evidence" to support the removal of the juror was the trial judge's own opinion that after spending one week a month for eighteen months in "Drug Court," Juror No. 6 "displayed every indicia of being an addict".[2]

---

**2.** Defense objected to the disqualification of the juror and moved for a mistrial.

442

■ Having reviewed this record, we are of the opinion that the trial judge abused his discretion in discharging Juror No. 6. There is no competent evidence in the record to support the conclusion that Juror No. 6 was unable to perform as a juror because of drug use. Juror No. 6 answered "no" to all questions concerning possible drug abuse. All the other "evidence" was conjecture concerning drugs. The conclusions attributed to Dr. Polivoy were not based upon any medical tests or examinations to determine drug use, but were based solely on the doctor's in-court observations conveyed privately to the trial judge.

■ While the decision to remove a juror because of inability to perform the usual functions of a juror is within the sound discretion of the trial judge, the exercise of this judgment must be based upon a sufficient record of competent evidence to sustain removal. We find nothing in this record to support removal of Juror No. 6.

Judgments of sentence reversed and case remanded for a new trial.

JONES, C. J., took no part in the consideration or decision of this case.