J-S33025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STANLEY GREEN | : | |
| | : | |
| Appellant | : | No. 1257 EDA 2017 |

Appeal from the PCRA Order April 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009234-2008

BEFORE:     OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED AUGUST 29, 2018**

Stanley Green appeals from the denial of collateral relief for his convictions for third-degree murder and firearms offenses arising from the shooting death of Jameil Martin. He makes numerous claims that trial counsel was ineffective. He also argues trial counsel's cumulative errors rendered his trial fundamentally unfair, and that the PCRA court erred by not granting an evidentiary hearing. We affirm.

In April 2008, during an altercation on a corner in Philadelphia, Green pulled out a gun and shot Martin, who died from his wounds. Police investigated and charged Green. At Green's jury trial in December 2009, the prosecution presented the testimony of numerous witnesses, including three eyewitnesses who testified that Green fired multiple shots at Martin, even after Martin turned and ran. **See** N.T., 12/10/09, at 107, 219-221; N.T., 12/15/09,

_____

*   Former Justice specially assigned to the Superior Court.

at 38-41. One of the eyewitnesses testified that Green chased after Martin and continued to shoot at him. That witness also said that although Martin had his hands in his pockets, the "pockets were too small to conceal any weapon." N.T., 12/10/09, at 211. That testimony was corroborated by testimony of a police crime scene investigator that, based on where the shell cases landed, the shooter was moving while firing at Martin. N.T., 12/15/09, at 160-161.

The Commonwealth also presented the testimony of a medical examiner, Dr. Gary Collins. Dr. Collins testified that he did not perform the victim's autopsy, but offered opinions based on information in the autopsy report, including that the victim might have been holding his arms in a "defensive posture" when Green shot him. N.T., 12/16/09, at 80-81. Trial counsel did not object either to the admission into evidence of the autopsy report, or to Dr. Collins' testimony.

Green testified in his own defense that Martin was pulling a gun from his pocket when Green fired at him, and that a man who was with Martin at the time of the shooting took Martin's gun from the scene. Green described the man as "short, brown skin, he had a brown hoody on, and a Muslim kufi." N.T., 12/16/09, at 171. The only other witness for the defense testified she did not did not see the shooting, but was nearby, and said that a "short and stocky" man with a mustache who was wearing a brown sweatshirt, black coat, and a kufi "may have" had a gun. *Id.* at 138-139.

Following the close of evidence, the trial court instructed the jury,

including about the Commonwealth's burden of proving guilt beyond a reasonable doubt. The court illustrated the reasonable doubt analysis by drawing an analogy to having to decide whether a loved one should go through with a medical procedure for a life-threatening condition.

The jury found Green guilty of third-degree murder, firearms not to be carried without a license, carrying a firearm on public streets or public property in Philadelphia, and possession of an instrument of crime.[1] The Court sentenced him in January 2010 to an aggregate term of incarceration of 19½ to 39 years. Green filed a direct appeal, and this Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied Green's petition for allowance of appeal on November 14, 2011.

On November 6, 2012, Green filed a timely *pro se* Post Conviction Relief Act ("PCRA") petition. The court appointed counsel who filed both an amended petition and a supplemental amended petition. The PCRA court dismissed the petition on April 7, 2017.[2] This appeal followed.[3]

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106, 6108, and 907(a).

[2] Although neither the lower court docket nor the certified record demonstrates that the PCRA court sent Pa.R.Crim.P 907 notice of its intent to dismiss the PCRA petition, we will not remand. The PCRA court's opinion states that it did, in fact, send Rule 907 notice, and in any event, Green does not claim that he did not receive the Rule 907 notice. Rather, he argues that the Rule 907 notice was substantively deficient. Green's Br. at 45-46. No remand is necessary because Green implicitly concedes having received the notice, and, as discussed below, his claims lack merit.

[3] The PCRA court ordered Green to file a Pennsylvania Rule of Appellate

Green raises the following claims on appeal:

1.  Whether PCRA counsel was ineffective for failing to raise a meritorious trial counsel ineffectiveness claim for failing to object to the trial court's reasonable doubt instruction.

2.  Whether trial counsel failed to object on confrontation grounds to Dr. Gary Collins's [sic] forensic pathology testimony concerning Martin's gunshot wounds because Dr. Collins did not perform Martin's autopsy or write the autopsy report, yet he based his opinions regarding the gunshot wounds on the autopsy report written and certified by Dr. Bennett Preston.

3.  Trial counsel failed to retain and present an independent forensic pathologist to rebut the Commonwealth's claim that Green shot Martin as Martin had his hands in a defensive posture.

4.  Trial counsel's cumulative errors rendered Green's trial fundamentally unfair.

5.  The PCRA court erred by not granting an evidentiary hearing.

Green's Br. at 4.

## I. Green Is Not Entitled to Relief on his Ineffectiveness Claims.

Green claims his PCRA counsel was ineffective for failing to raise a claim that trial counsel was ineffective for not objecting to the reasonable doubt instruction. He further argues the PCRA court should not have dismissed his PCRA petition because he raised meritorious claims that his trial counsel was ineffective for failing to make a Confrontation Clause objection to Dr. Collins'

---

Procedure 1925(b) statement, but Green did not comply. We decline to find waiver, however, because there is no notation on the docket that the trial court prothonotary gave Green the required notice of the entry of the Rule 1925(b) order. ***See*** Pa.R.C.P. 236(a); ***Commonwealth v. Davis***, 867 A.2d 585, 588 (Pa.Super. 2005) (*en banc*).

testimony, and for failing to present expert testimony to rebut Dr. Collins' testimony.

When reviewing the dismissal of a PCRA petition, we examine the PCRA court's "findings of fact to determine whether they are supported by the record, and . . . its conclusions of law to determine whether they are free from legal error." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). To prevail on an ineffectiveness claim, a petitioner must establish that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Id.** We presume counsel was effective and the petitioner bears the burden of demonstrating ineffectiveness. **Id.** The prejudice prong requires the petitioner to show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's alleged ineffectiveness. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011). The petitioner must establish all three prongs of the ineffectiveness test in order to prevail. **Spotz**, 84 A.3d at 311.

### A.    Failure to Object to the Trial Court's Reasonable Doubt Instruction

Green first argues his PCRA counsel was ineffective for not arguing that trial counsel was ineffective for failing to object to the trial court's reasonable doubt jury instruction. He argues that the hypothetical the trial court used to explain reasonable doubt overstated the degree of uncertainty necessary to secure an acquittal, and in effect increased it to something greater than

reasonable doubt. Green raises this claim for the first time on appeal. He did not make such a claim in any of his filings before the PCRA court. He has therefore waived it. Pa.R.A.P.302; **Commonwealth v. Henkel**, 90 A.3d 16, 20, 29 (Pa.Super. 2014) (*en banc*) (holding that PCRA petitioner cannot raise claim that PCRA counsel was ineffective for the first time on appeal).

Even if Green had preserved this claim, we would deny relief because the underlying objection lacks arguable merit. "[A] jury charge must be read as a whole to determine whether it is fair or prejudicial." **Commonwealth v. Miller**, 746 A.2d 592, 604 (Pa. 2000). "The trial court has broad discretion in phrasing its instructions so long as the law is clearly, adequately and accurately presented to the jury." **Id.**

Here, the trial court began its reasonable doubt instruction by telling the jury that reasonable doubt is "not proof beyond all doubt," but one "that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs":

> Proof beyond a reasonable doubt is not proof beyond all doubt. Proof beyond a reasonable doubt is not proof to a mathematical certainty. It is likewise not a requirement that the Commonwealth demonstrate the complete impossibility of innocence.
>
> A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs.
>
> A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged.

N.T., 12/17/09, at 131-32.

The court then illustrated reasonable doubt to the jury by drawing an analogy to having to decide whether a loved one should go through with a medical procedure for a life-threatening condition:

> If you were told by that loved one's physician that the loved one had a life-threatening condition, very likely, ladies and gentlemen, you are going to get a second opinion, you are probably going to get a third opinion.
>
> If you are like me, you . . . are going to call everybody you know about – who got some knowledge about medicine.
>
> What do you know? Tell me about this illness. Tell me what the protocols are for it. How do we best treat it? Who is the best doc in town? What do you know? You might do Internet research. You do a ton of stuff.
>
> But at some point the question will be called. Do I go forward with the medical procedure for my loved one? . . .
>
> If you go forward, it is not because you have moved beyond all doubt. There are no guaranties in life. If you go forward, it is because you have moved beyond a reasonable doubt.
>
> Ladies and gentlemen, a reasonable doubt must be a real doubt. It is not a doubt that is imagined or manufactured to avoid carrying out an unpleasant responsibility. I told you, I'm not asking you to do something easy. I'm asking you to do something hard.

N.T. Trial, 12/17/2009, at 132-134.

The court concluded the reasonable doubt instruction by stating that "a mere suspicion of guilt" is insufficient for the jury to convict, and that the prosecution bears the burden of proving guilt beyond a reasonable doubt:

> To find a citizen guilty, it must be grounded on the evidence that proves the elements of the crimes beyond a reasonable doubt. A mere suspicion of guilt is insufficient to meet the

> Commonwealth's burdens. The Commonwealth bears the burden of proving Stanley Green guilty beyond a reasonable doubt.

*Id.* at 134.

Green argues that the trial court's hypothetical unconstitutionally increased the degree of doubt. In support, he cites a federal *habeas* decision, ***Brooks v. Gilmore***, 2:15-cv-05659, 2017 WL 3475475, at \*5 (E.D. Pa. Aug. 11, 2017), ***appeal dismissed sub nom. Brooks v. Superintendent Greene SCI***, No. 17-2971, 2018 WL 1304895 (3d Cir. Feb. 28, 2018). His reliance on ***Brooks*** is misplaced for two reasons. First, we are not bound by decisions of the federal district courts. ***See Commonwealth v. Orie***, 88 A.3d 983, 1009 (Pa.Super. 2014). Second, the jury instruction at issue here differed in material ways from the instruction the federal district court found unconstitutional in ***Brooks***.

In ***Brooks***, the trial court analogized the reasonable doubt analysis to having to decide whether a loved one should undergo "the only known protocol or the best protocol" for "a life-threatening condition," where the protocol "was an experimental surgery. . . ." *Id.* at 3. The federal district court in ***Brooks*** trained on these additional facts – a single or best protocol that was experimental – in finding that the instruction increased the degree of doubt to something more than reasonable doubt. The court explained that, in its view, rather than reasonable doubt, one would need "profound, if not overwhelming, doubt to deny a loved one their only or best opportunity for a cure" of a "life-threatening condition." *Id.* at \*4. The court reasoned that such a "powerful

and emotionally charged metaphor" erroneously instructed the jury to disregard doubts and to favor conviction, because "any person of decency and morals would strive to put aside doubt when faced with a single life-saving option for a loved one." *Id.*

The instruction in this case included no such details, or any other factor that would be improper under *Brooks*. Unlike the analogy at issue in *Brooks*, the hypothetical here only referred to a "protocol" as a piece of information one might want to know before deciding whether to "go forward with the medical procedure." In contrast, in *Brooks*, the condition was one for which there was an "only known" or "best" protocol, and that protocol was an "experimental surgery." Because these key facts were absent from the hypothetical the court used in this case, and there were no other factors in the hypothetical here that would have caused the jury improperly to put aside doubts, *Brooks* is inapposite and does not persuade us that the instruction here was erroneous.

When the analogy is read in the context of the total jury instruction, the trial court's explanation of reasonable doubt was not improper. The jury instructions in this case first correctly informed the jury that a reasonable doubt "is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs," and must arise from the evidence, or lack thereof. N.T. Trial, 12/17/2009, at 131. The hypothetical to which Green belatedly objects then followed, and the court closed the reasonable doubt

instruction by reminding the jury that the Commonwealth bore the burden of proving guilt beyond a reasonable doubt, and that it could not carry that burden with a "mere suspicion of guilt." *Id.* at 134. The hypothetical was in no way contrary to the other portions of the reasonable doubt instruction, which are undisputed here. Overall, the instruction correctly informed the jury about the Commonwealth's burden of proving guilt beyond a reasonable doubt. Accordingly, the underlying claim lacks arguable merit.

Although Green complains that the hypothetical described reasonable doubt in terms of deciding whether to "go forward" with a treatment, rather than as a factor that would cause hesitation, that observation does not tell the whole story. A more complete consideration of the charge in its entirety reveals that the judge, in fact, first told the jury that a reasonable doubt is one that would "cause a reasonably careful and sensible person to pause, to hesitate, to refrain. . . ." N.T., 12/17/09, at 131. When the court later used the phrase, "go forward," it did so as a way of telling the jury that the Commonwealth bore the burden of convincing the jury beyond a reasonable doubt. That was a correct statement of the law.

Moreover, even if the use of the hypothetical constituted error, Green fails to establish prejudice. The evidence against Green was quite strong. The Commonwealth presented the testimony of multiple eyewitnesses that was corroborated by physical and ballistics evidence. Green has not established that there is a reasonable probability that the outcome of his trial would have been different if trial counsel had objected to the reasonable doubt jury

instruction. *See Commonwealth v. Fisher*, 813 A.2d 761, 775 (Pa. 2002) (Saylor, J., concurring) (finding no prejudice, despite concluding that objection to hypothetical on reasonable doubt would have had arguable merit, where other parts of instructions gave jury correct definitions of reasonable doubt and the evidence was overwhelming). Accordingly, even if PCRA counsel had raised this claim before the PCRA court, Green would not be entitled to relief.

### B. Failure to Object to the Testimony of Dr. Gary Collins and the Admission of the Autopsy Report

Green next argues trial counsel was ineffective for not objecting to the admission of the autopsy report and to Dr. Gary Collins' expert forensic pathology testimony. He contends that such an objection would have been meritorious because Dr. Collins did not perform the victim's autopsy, and rather based his opinions on the autopsy report that Dr. Bennett Preston prepared. Green argues that if his trial counsel had objected to the autopsy report and Dr. Collins' testimony, it is reasonably likely that the jury would have found him not guilty of third-degree murder.

The admission of an autopsy report without the accompanying testimony of the person who prepared it violates a defendant's Sixth Amendment right to confront witnesses, unless the preparer "was unavailable and [the defendant] 'had a prior opportunity to cross-examine' him." *Commonwealth v. Brown*, 185 A.3d 316, 329 (Pa. 2018). Further, the Confrontation Clause "precludes the admission of a testimonial report through

'surrogate' in-court testimony." *Id.* at 319 n.3 (citing ***Bullcoming v. New Mexico***, 564 U.S. 647, 652-53 (2011)); ***but see Commonwealth v. Yohe***, 79 A.3d 520, 538 (Pa. 2013) (distinguishing ***Bullcoming*** and finding no Confrontation Clause violation where the testifying witness reviewed the entire file, compared test printouts, certified the accuracy of results, and signed the report).

Here, Green cannot prevail on his ineffectiveness claim because he fails to establish prejudice. To the extent the autopsy report was evidence that Martin died from gunshot wounds, Green's own testimony was evidence of that same fact. Green took the stand and testified at trial that he shot Martin. N.T., 12/16/09, at 172. Further, Howard and Mumford testified that Martin died. N.T., 12/10/09, at 170; N.T., 12/15/09, at 71. It is therefore difficult to see how the report independently influenced the jury's decision to such an extent that there is a reasonable probability that the verdict would have been different without it.

As for Dr. Collins' testimony, to the extent it posed a Confrontation Clause issue,[4] Green is similarly unable to prove prejudice. Green's arguments focus on Dr. Collins' testimony that the position of bullet holes in Martin indicated that Martin's arms were in a defensive position when Green shot

---

[4] ***But see Williams v. Illinois***, 567 U.S. 50, 58 (2012) (plurality) (citing F.R.E. 703, and stating, "Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause"), ***cited in Brown***, 185 A.3d at 327.

him. Green fails to establish that testimony prejudiced him because Dr. Collins' testimony played a minor role in the Commonwealth's evidence disproving Green's claim of self-defense.

A claim of self-defense requires evidence of three elements: (a) the defendant reasonably believed that he or she was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) the defendant did not violate any duty to retreat. ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012). If the evidence before the factfinder raises a question about whether the defendant acted in self-defense, the Commonwealth must disprove self-defense beyond a reasonable doubt. ***Id.*** (citing ***Commonwealth v. Black***, 376 A.2d 627, 630 (Pa. 1977)).

In this case, the evidence that Green was not acting in self-defense was extensive. Three eyewitnesses testified that Martin was unarmed, and police did not find a gun anywhere at the scene or on Martin's person. N.T., 12/10/09, at 100-101, 211; N.T., 12/15/09, at 41; N.T., 12/15/09, at 140; N.T., 12/16/09, at 37. Two of the eyewitnesses stated that, after Green began shooting, Martin ran away as Green chased him and continued to shoot at him. N.T., 12/10/09, at 101, 107; 219-21; N.T., 12/15/09, at 38-39, 160-61. Green was the only person to testify that Martin had a gun, and no evidence corroborated his testimony that Martin had a gun. N.T., 12/16/09, at 171-72. The only other defense witness did not testify that she saw the shooting, and,

inconsistently with Green's testimony, said that it was Martin's companion at the time of the shooting who "may have" had a gun, not Martin. *Id.* at 138-39.

In view of this evidence, we cannot say that if trial counsel had successfully objected to Dr. Collins' testimony, there is a reasonable likelihood the outcome of Green's trial would have been different. *Cf. Brown*, 185 A.3d at 318 (rejecting Confrontation Clause challenge on harmless error grounds).[5]

### C. Failure to Retain and Present an Independent Forensic Pathologist

Green also claims that trial counsel was ineffective for failing to retain and present the testimony of an independent forensic pathologist to rebut Dr. Collins' testimony that Martin suffered defensive wounds. N.T. 12/16/09, 79-80. The PCRA court properly dismissed this claim because Green again cannot establish prejudice.

"Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (quoting *Commonwealth v.*

---

[5] The Court in *Brown* unanimously agreed that the Confrontation Clause error in admitting an autopsy report "presented without accompanying testimony by its author" was harmless error, but no majority of the Court was in agreement as to the reason the error was harmless.

*Wayne*, 720 A.2d 456, 470 (Pa. 1998).

Here, the PCRA court found that even if trial counsel had presented rebuttal expert testimony, it would not have altered the outcome of the trial because of the extent of the evidence against Green. Trial Court Opinion, flied Aug. 31, 2017, at 8. We agree. As we explain above, the testimony of the three eyewitnesses, the testimony of the crime scene investigator, and the absence of evidence corroborating Green's testimony, were strong evidence against Green. The testimony that Green chased after Martin while continuing to shoot at him was particularly persuasive evidence that Green did not shoot Martin in self-defense. We cannot say that there is a reasonable probability that even if trial counsel had obtained and introduced into evidence rebuttal expert testimony, the verdict would have been different. PCRA court did not err in denying Green's ineffectiveness claims.

## II. Green is not Entitled to Relief for Cumulative Ineffectiveness.

Green seeks PCRA relief based on the cumulative effect of the purported errors raised in his Amended Petition. However, "no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Tedford*, 960 A.2d 1, 56 (Pa. 2008) (quoting *Commonwealth v. Washington*, 927 A.2d 586, 617 (Pa. 2007)). Therefore, Green's claim of cumulative errors does not render counsel's assistance ineffective.

## III. The PCRA Court Did Not Err in Refusing to Grant an

**Evidentiary Hearing.**

Green claims that the PCRA court erred in refusing to grant an evidentiary hearing. "[T]he PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa.Super. 2007). On appeal, to determine whether the failure to conduct a hearing was error, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." *Id.* (quoting *Commonwealth v. Turetsky*, 925 A.2d 876, 882 (Pa.Super. 2007)).

There was no genuine issue of material fact as to any claim before the trial court (*i.e.*, Green's claims other than regarding the reasonable doubt instruction, which he challenges for the first time on appeal). As explained above, the record establishes that trial counsel was not ineffective for failing to object to the autopsy report and medical examiner testimony, or for not calling a rebuttal expert. There was no need for an evidentiary hearing, and the PCRA court did not err in dismissing Green's petition without holding one.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/18