J-S46030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR BATCHLER | : | |
| | : | |
| Appellant | : | No. 1837 EDA 2017 |

Appeal from the Judgment of Sentence May 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010213-2015

BEFORE: BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.: **FILED SEPTEMBER 06, 2018**

Appellant, Lamar Batchler, appeals from the May 5, 2017 judgment of

sentence entered in the Court of Common Pleas of Philadelphia County

following a jury trial. We affirm.

The trial court summarized the procedural history and facts of the crime

as follows:

> [Appellant] was arrested on August 6, 2015, and charged
> with murder, violations of The Uniform Firearms Act and
> possessing the instruments of a crime. [Appellant] was bound
> over for court on all charges following a preliminary hearing on
> October 13, 2015. A jury was empaneled from April 17, 2017[,]
> through April 21, 2017, wherein [Appellant] was convicted of
> murder of the first degree and firearms not to be carried without
> a license.[1] On May 5, 2017, [Appellant] was sentenced to . . .
> mandatory life imprisonment to be followed by three and one-half
> to seven years' incarceration for violating The Uniform Firearms

---

[1] 18 Pa.C.S. §§ 2502(A), 6106(A)(1), respectively.

Act. Post-Sentence Motions were not filed, however a timely appeal was made to the Superior Court of Pennsylvania.

* * *

The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that a couple of days prior to October 17, 2014, brothers Kiron and Leonard Clinton were socializing at a bar located at 8th Street and Hunting Park Avenue in the City and County of Philadelphia. A[n] unnamed woman spoke with Leonard about selling him a dime bag of marijuana in return for a couple of drinks, which [Appellant] overheard and took offense, claiming he was the only one selling weed in that area. There was a discussion between the brothers and [Appellant], which intensified and got louder with Kiron eventually hitting [Appellant]. A couple of [Appellant's] friends came over and broke up the argument, which seemed over at that point. (N.T. 4-19-2017, pp. 143-149, 182, 212-217).

On October 17, Kiron, Leonard, and a third brother, Cornel, returned to the same bar where they were hanging out and shooting pool. (N.T., 4-19-2017, pp. 151-152). They noticed that one of [Appellant's] friends who broke up the scuffle from a couple of days prior was also in the bar. Around 10:30 that night the brothers stepped outside for a cigarette. (N.T. 4-19-2017, pp. 152-153). While outside the bar, [Appellant] approached and an argument again ensued. (N.T., 4-19-2017, pp. 153-159, 194-198, 218-219). Despite that [Appellant] pulled out his gun the quarrel seem[e]d to end. [Appellant] turned and walked up the street away from the group of men outside the bar. Kiron turned to leave to go back into the back door of the bar, however that door was locked. As Kiron attempted to enter the bar's front door [Appellant] shot at him at least seven times, striking the decedent in the back and then twice in the chest. Before collapsing[,] the decedent returned fire. [Appellant] fled the scene. (N.T., 4-19-2017, pp. 159-163, 177-179, 199-201, 221-226). Leonard and Cornel Clinton went to their fallen brother, retrieved his gun and proceeded to run down the street in an attempt to shoot [Appellant]. (N.T., 4-20-2017, pp. 17-190, 164-169, 178-179, 186-187, 211-212). The police arrived and took Kiron Clinton to the hospital where he was pronounced [dead]. Although a grainy video, the argument and shooting were captured on video which was produced during the trial.

Trial Court Opinion, 11/6/17, at 1–3. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the same issue on appeal as he identified in his Rule 1925(b) statement. He assails the sufficiency of the evidence supporting the first-degree-murder conviction "in that the evidence failed to establish that there was a willful, deliberate, and premeditated killing since the evidence showed that Appellant was acting in self defense." Appellant's Brief at 2 (full capitalization omitted).

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Von Evans***, 163 A.3d 980, 983 (Pa. Super. 2017). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting ***Commonwealth v. Robertson-Dewar***, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107

A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Mucci*, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. *Commonwealth v. Ballard*, 80 A.3d 380, 390 (Pa. 2013). A jury may infer the intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body." *Sanchez*, 36 A.3d at 37.

Appellant asserts that he was acting in self defense. Appellant's Brief at 8. He admits that no one saw Kiron Clinton ["the victim"] "draw his gun, but it was undisputed that he was in possession of a gun and that he used same." *Id*. Appellant acknowledges that the victim "appeared to be walking away," but suggests the victim's "intention may have been to escalate the confrontation by. . . turning back with his gun drawn." *Id*. at 9. Appellant posits that even if Appellant fired his gun first, the victim's "behavior in

becoming frustrated and agitated was a clear indication that he was becoming aggressive." *Id*. at 10.

A claim of self-defense requires evidence establishing the following three elements:

> "(a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat." ***Commonwealth v. Samuel***, 527 Pa. 298, 590 A.2d 1245, 1247–48 (1991). ***See also Commonwealth v. Harris***, 550 Pa. 92, 703 A.2d 441, 449 (1997); 18 Pa.C.S. § 505.2. Although the defendant has no burden to prove self-defense, . . . before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." Once the question is properly raised, "the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." ***Commonwealth v. Black***, 474 Pa. 47, 376 A.2d 627, 630 (1977). The Commonwealth sustains that burden of negation "if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger." ***Commonwealth v. Burns***, 490 Pa. 352, 416 A.2d 506, 507 (1980).

***Commonwealth v. Mouzon***, 53 A.3d 738, 740–741 (Pa. 2012).

The Pennsylvania Crimes Code governs self-defense and provides, in relevant part, as follows:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the

- 5 -

purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

* * *

(2)  The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i)  the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii)  the actor knows that he can avoid the necessity of using such force with complete safety by retreating. . . .

* * *

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

(iii) the person against whom the force is used displays or otherwise uses:

(A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to

sentences for offenses committed with firearms); or

(B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. § 505(a)–(b); ***Commonwealth v. Smith***, 97 A.3d 782, 786 (Pa. Super. 2014).

We rely on the trial court's rejection of this claim:

That the evidence was sufficient to convict [Appellant] of murder of the first degree is straightforward and unmistakable. The murder is captured on video, conclusively depicting [Appellant] in an argument with [the victim]. It further shows [Appellant] pulling out his gun and displaying it to [the victim] and then turning and walking up the street. The argument is over. The people are disbursing [sic]. [The victim] is leaving, walking away. The video then shows [Appellant] turning around and shooting [the victim] in the back as [the victim] was walking away. [Appellant] then shoots again seven or so times, striking his victim twice more in the chest. It was only after being shot three times that [the victim] returns fire before collapsing onto the sidewalk, mortally wounded. Rather than being a matter of insufficient evidence, this is classic demonstration of a premeditated, deliberate intentional killing on video.

* * *

The video clearly shows that [Appellant] was not in danger from [the victim] when he started shooting; the argument had ended and the parties were dispersing. [Appellant], after walking away, suddenly turned and shot [the victim] in the back. [Appellant] continued shooting, at least seven more times at [the victim], striking [the victim] twice more in the chest. [Appellant] did all of this before [the victim] was able to pull his gun and return fire. The video distinctly shows that [Appellant] was not acting in self-defense; he was the aggressor and as such the prosecution unequivocally disproved [Appellant's] claim of self-defense.

Trial Court Opinion, 11/6/17, at 4–5, 6–7.

Appellant's assertion in his brief that there was equivocal testimony that the victim fired his gun first is incorrect. Appellant's Brief at 9 (citing N.T., 4/19/17, at 61–62, 101, 112). Lashey Johnson, the mother of a child fathered by Leonard Clinton, the victim's brother, testified at trial and additionaly had testified at Appellant's preliminary hearing. N.T., 4/19/17, at 60. At trial, Ms. Johnson acknowledged as follows:

> [By Ms. Johnson]: I was explaining like I said [the victim] shot first and then I turned around and said [Appellant] shot first because [Appellant] shot first. I'm not really sure about if, you know, if [the victim] ever shot. Do you understand what I'm saying?
>
> [By the Commonwealth]: Did you see [the victim] shoot?
>
> A. No.
>
> Q. You did see him with a gun?
>
> A. Yes.

N.T., 4/19/17, at 62. Ms. Johnson stated that she did not see the victim shooting back at Appellant, and on cross-examination, she corrected her statement to Philadelphia Police Detective Nathan Williams that she saw the victim shoot the gun. *Id*. at 101. Also on cross-examination, defense counsel asked Ms. Johnson, "[A]t what point did [the victim] pull the gun out?" and Ms. Johnson stated, "He doesn't pull his gun out—." *Id*. at 111. She testified when the victim went to turn around to come back in the bar, "he didn't pull no gun out." *Id*. at 112.

Eyewitness Leonard Clinton, the victim's brother, testified that as the victim and Appellant talked, the victim stopped talking and "walked away. He turned his back and walked away." N.T., 4/19/17, at 159. Leonard stated that the victim reached the front door of the bar "once the shots started ringing out." *Id*. Leonard testified that he was five feet from Appellant and he saw Appellant shooting "when the shots started ringing out." *Id*. at 160– 161. Leonard testified that Appellant "just never stopped" shooting . . . maybe seven times." *Id*. at 162. The eyewitness stated he "never seen [the victim] pull a gun." *Id*. at 201.

We have reviewed the record, including the complete notes of testimony at trial. There is no merit to Appellant's sufficiency claim nor evidentiary support to his assertion of self-defense.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/6/18